Case 4:13-cv-03806   Document 24   Filed in TXSD on 08/16/16   Page 1 of 18

United States District Court
Southern District of Texas
**ENTERED**
August 17, 2016
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| JENNIFER TURNER for R.B., § | |
| § | |
| Plaintiff, § | |
| § | |
| V. § | CIVIL ACTION NO. H-13-3806 |
| § | |
| CAROLYN W. COLVIN, ACTING § | |
| COMMISSIONER OF THE SOCIAL § | |
| SECURITY ADMINISTRATION, § | |
| § | |
| Defendant. § | |

## MEMORANDUM AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Before the Court in this social security appeal is Defendant's Motion for Summary Judgment (Document No. 19) and Plaintiff's cross Motion for Summary Judgment (Document No. 22). After considering the cross motions for summary judgment, the additional briefing (Documents No. 23), the administrative record, the written decision of the Administrative Law Judge, and the applicable law, the Court ORDERS, for the reasons set forth below, that Defendant's Motion for Summary Judgment is GRANTED, Plaintiff's Motion for Summary Judgment is DENIED, and the decision of the Commissioner of the Social Security Administration is AFFIRMED.

### I.      Introduction

Plaintiff Jennifer Turner ("Turner"), proceeding on behalf of her minor child R.B., brings this action pursuant to Section 205(g) of the Social Security Act ("Act"), 42 U.S.C. § 405(g), seeking judicial review of an adverse final decision of the Commissioner of the Social Security

Administration ("Commissioner") denying her application for supplemental security income benefits. Turner contends: (1) that the Administrative law Judge's ("ALJ") "determination that R.B. does not meet or medically equal a listed impairment is not supported by substantial evidence;" and (2) "substantial evidence does not support the ALJ's determination that R.L.B. does not functionally equal a listed impairment." The Commissioner, in contrast, argues that there is substantial evidence in the record to support the ALJ's decision and that the ALJ properly applied the applicable Listings and regulations.

## II.   Administrative Proceedings

On May 7, 2010, Turner filed an application for supplemental security income benefits under Title XVI, alleging that her minor child, R.B., had been disabled since March 31, 2010, as a result of Crohn's disease. (Tr. 133-139). The Social Security Administration denied the application at the initial and reconsideration stages. After that, Turner requested a hearing before an ALJ. The Social Security Administration granted her request and the ALJ, Paul W. Schwarz, held a hearing on November 21, 2011, at which Turner's claims were considered *de novo*. (Tr. 30-70). On January 20, 2012, the ALJ issued his decision finding that R.B. was not disabled, and was therefore not entitled to supplemental security income benefits. (Tr. 11-22).

Turner sought review of the ALJ's adverse decision with the Appeals Council. The Appeals Council will grant a request to review an ALJ's decision if any of the following circumstances are present: (1) it appears that the ALJ abused his discretion; (2) the ALJ made an error of law in reaching his conclusion; (3) substantial evidence does not support the ALJ's actions, findings or conclusions; or (4) a broad policy issue may affect the public interest. 20 C.F.R. § 404.970; 20

C.F.R. § 416.1470. After considering Turner's contentions in light of the applicable regulations and evidence, the Appeals Council concluded, on November 29, 2012, that there was no basis for review. (Tr. 1-3). The ALJ's decision thus became final.

Turner has filed a timely appeal of the ALJ's decision. 42 U.S.C. § 405(g).[1] The parties have filed cross motions for summary judgment (Document Nos. 19 & 22). The appeal is now ripe for ruling.

### III. Standard for Review of Agency Decision

The court's review of a denial of disability benefits is limited "to determining (1) whether substantial evidence supports the Commissioner's decision, and (2) whether the Commissioner's decision comports with relevant legal standards." *Jones v. Apfel*, 174 F.3d 692, 693 (5th Cir. 1999). Indeed, Title 42, Section 405(g) limits judicial review of the Commissioner's decision: "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." The Act specifically grants the district court the power to enter judgment, upon the pleadings and transcript, "affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing" when not supported by substantial evidence. 42 U.S.C. § 405(g). While it is incumbent upon the court to examine the record

---

[1] On January 29, 2013, Plaintiff filed both a Complaint and an Application to Proceed In Forma Pauperis ("IFP"). Document No. 1 in Civil Action No. H-13-3806; Document No. 1 in Misc. Action No. H-13-188. The IFP application was denied, and Plaintiff was instructed to make monthly payments towards the filing fee. Those payments were completed in August 2013. It was not until October 6, 2015, however, that the Civil Action was opened by the Clerk of Court, and not until December 2015 that Defendant, after being served, filed an Answer and provided the Court with the administrative record. Defendant filed its Motion for Summary Judgment on March 31, 2016; Plaintiff's cross Motion for Summary Judgment was filed on April 14, 2016.

in its entirety to decide whether the decision is supportable, *Simmons v. Harris*, 602 F.2d 1233, 1236 (5th Cir. 1979), the court may not "reweigh the evidence in the record nor try the issues de novo, nor substitute [its] judgment for that of the [Commissioner] even if the evidence preponderates against the [Commissioner's] decision." *Johnson v. Bowen*, 864 F.2d 340, 343 (5th Cir. 1988); *Jones v. Apfel*, 174 F.3d 692, 693 (5th Cir. 1999); *Cook v. Heckler*, 750 F.2d 391 (5th Cir. 1985). Conflicts in the evidence are for the Commissioner to resolve. *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992).

The United States Supreme Court has defined "substantial evidence," as used in the Act, to be "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. N.L.R.B.,* 305 U.S. 197, 229 (1938). Substantial evidence is "more than a scintilla and less than a preponderance." *Spellman v. Shalala,* 1 F.3d 357, 360 (5th Cir. 1993). The evidence must create more than "a suspicion of the existence of the fact to be established, but no 'substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983).

## IV. Availability of Supplemental Security Income Benefits

Supplemental security income ("SSI") benefits under Title XVI of the Social Security Act, 42 U.S.C. § 1381 et seq, are available to aged, blind and disabled individuals, including minors who are disabled. See 42 U.S.C. §§ 1382, 1382c. Under 42 U.S.C. § 1382c(a)(3)(A), an individual aged 18 or over,

> shall be considered disabled [for purposes of supplemental security income benefits]

> if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.

Such an individual, however, will only be found to be under a disability if:

> his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 13872c(a)(3)(B). For individuals under the age of 18, supplemental security income benefits are available if the individual is disabled – meaning for those under 18 years of age that:

> [the] individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 1382c(a)(3)(C).

An individual seeking supplemental security income benefits, either for themselves at 18 years of age or older, or on behalf of a minor (under the age of 18), has the burden of proving his disability. *Johnson v. Bowen*, 864 F.2d 340, 344 (5th Cir. 1988); *Tate ex rel. Tate v. Commissioner*, 368 F.Supp.2d 661, 663-664 (E.D. Mich. 2005); *Bean v. Astrue*, 2009 W.L. 3335026 at *19 (M.D. Tenn. 2009).

In evaluating whether a child (under the age of 18) is entitled to supplemental security income benefits under Title XVI, a three-step sequential analysis is employed. *See* 20 C.F.R. § 416.924(a) - (d). First, it must be determined whether the child is engaged in substantial gainful activity. If so, a finding of not disabled must be made; if not, it must next be determined if the

child's impairment or combination of impairments is severe. A child will not be found to have a severe impairment if it constitutes only a "slight abnormality or a combination of slight abnormalities that causes no more than minimal functional limitations.." 20 C.F.R. § 416.924(c). If the child has a severe impairment it must finally be determined whether the impairment meets, equals or is functionally equal in severity to a listed impairment. 20 C.F.R. §§ 416.924(d), 416.926, 416.926a. Whether the impairment equals a listed impairment is determined by considering the medical evidence in connection with the requirements of the applicable listing. 20 C.F.R. § 416.926. If the impairment does not actually equal a listed impairment, it must be determined whether the impairment or combination of impairments "functionally" equals the requirements of any listed impairment. 20 C.F.R. § 416.926a. For this functional equivalence inquiry, it must be considered whether the child's impairment(s) results in a "marked" limitation in two, or an "extreme" limitation in one, of the following "domains": (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health a physical well-being. 20 C.F.R. § 416.926a(b). A "marked" limitation is one that interferes seriously with a child's ability to "independently initiate, sustain or complete activities." 20 C.F.R. § 416.926a(d)(2). An "extreme" limitation is one that "interferes very seriously with [one's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(d)(3).

**V.     Discussion**

The ALJ decided this case at the third step. At the first step, he found that R.B. was not engaged in substantial gainful activity. At step two, he found that R.B.'s Crohn's disease was a

severe impairment. At step three, the ALJ found that R.B.'s impairments did not meet or medically equal a listed impairment, including Listings 105.06 and 105.08. Finally, in determining whether R.B.'s impairments were functionally equivalent to a listed impairment, the ALJ addressed each of the six domains, and found that R.B.'s impairments limited him only in the domains of "caring for yourself" and "health and physical well being," and that his limitations in both domain were "less than marked." With neither marked limitations in two domains nor an extreme limitation in one domain, the ALJ determined, as provided for by 20 C.F.R. § 416.926a, that R.B.'s impairments were not functionally equivalent to a listed impairment and that he was consequently not disabled.

In this appeal, Turner challenges the ALJ's step three determination on two grounds, arguing: (1) that substantial evidence does not support his decision that R.B. does not have a impairment or combination of impairments that *meets or medically equals* Listing 105.06; and (2) that substantial evidence does not support his decision that R.B. does not have an impairment or combination of impairments that *functionally* equals a listed impairment. According to Turner, there is evidence in the record that R.B. met or medically equaled Listing 105.06 (inflammatory bowel syndrome), and evidence in the record that R.B. had marked limitations in three domains: attending and completing tasks; caring for yourself; and health and physical well-being.

In determining whether R.B.'s impairments met or equaled a listing, the ALJ focused on Listings 105.06 (inflammatory bowel disease) and 105.08 (malnutrition). In finding that neither listing was met or medically equaled, the ALJ wrote:

> The claimant's Crohn's disease does not meet or medically equal Listing 105.06 (inflammatory bowel syndrome). Part A is not satisfied because there is no evidence of obstruction of stenotic areas (not adhesions) in the small intestine or colon with proximal dilatation, confirmed by appropriate medically acceptable imaging or in surgery, requiring hospitalization for intestinal decompression or for surgery, and

7

occurring on at least two occasions at least 60 days apart within a consecutive six-month period.

Part B of the listing requires two of the following despite continued treatment as prescribed and occurring within the same consecutive six-month period: (1) anemia with hemoglobin less than 10.0 g/dL, present on at least two evaluations at least 60 days apart; or (2) serum albumin of 3.0 g/dL or less, present on at least two evaluations at least 60 days apart; or (3) clinically documented tender abdominal mass palpable on physical examination with abdominal pain or cramping that is not completely controlled by prescribed narcotic medi[c]ation, present on at least two evaluations at least 60 days apart; or (4) perineal disease with a draining abscess or fistula, with pain that is not completely controlled by prescribed narcotic medication. present on at least two evaluations at least 60 days apart; or (5) need for supplemental daily enteral nutrition via a gastrostomy or daily parenteral nutrition via a central venous catheter.

While it is arguable that the claimant had a draining abscess for greater than a consecutive six-month period to meet subsection 4 of part B due to a perianal fistul[a] that required three surgeries [ ] to implant drains (Exhibit 10F/89) and the present of scant drainage in December 2010, the perianal fistula was non-draining by June 2011 (Exhibit 10F).

Furthermore, [ ] the evidence does not show that the criteria for the other subsections in part B had been satisfied. The claimant does not have anemia with hemoglobin less than 10.0 g/dL, persisting for at least six months. His hemoglobin level was 10.1 g/dL in May 2010 (Exhibit 10F). It was 10.5 g/dL in June 2010. He does not have a serum albumin level of 3.0 g/dL or less. In May and June 2010, it was 4.0 g/dL. [R.B.] does not need supplemental daily enteral nutrition via gastostomy or daily parenternal nutrition via a central venous catheter.

The claimant's attorney argued that in addition to subsection four of part B, subsection three was satisfied. This is not supported by the evidence. Subsection three requires clinical documentation of a tender abdominal mass palpable on physical examination with abdominal pain or cramping that is not completely controlled by prescribed narcotic medi[c]ation, present on at least two evaluations at least 60 days apart. Although the claimant had abdominal pain on March 22, 2010, an examination of his abdomen revealed that it was soft and nontender to palpation (Exhibit 9F). On May 18, 2010, his doctor noted that "[h]e never complains of any abdominal pain" (Exhibit 4F). [R.B.] denied abdominal pain on September 17, 2010 and January 20, 2011 (Exhibit 10F).

Listing 105.08 (malnutrition) was also considered and found not to be met or medically equaled. First, part A is not satisfied because he does not have hemoglobin

>levels less than 10.0 g/dL, a serum albumin of 3.0 g/dL, or a fat-soluble vitamin, mineral, or trace mineral deficiency over a consecutive six month period. Second, while he has a low body mass index, he is not less than the third percentile for his age. (Exhibits 10F, 11F).

(Tr. 14-15). This determination by the ALJ, that R.B.'s Crohn's disease did not meet or equal Listing 105.06, is supported by substantial evidence.

Listing 105.06, for "Inflammatory bowel disease (IBD) documented by endoscopy, biopsy, appropriate medically acceptable imaging, or operative findings," provides for presumptive disability in the following circumstances:

>A. Obstruction of stenotic areas (not adhesions) in the small intestine or colon with proximal dilatation, confirmed by appropriate medically acceptable imaging or in surgery, requiring hospitalization for intestinal decompression or for surgery, and occurring on at least two occasions at least 60 days apart within a consecutive 6–month period;
>
>OR
>
>B. *Two* of the following despite continuing treatment as prescribed and occurring within the same consecutive 6–month period:
>1. Anemia with hemoglobin less than 10.0 g/dL, present on at least two evaluations at least 60 days apart; or
>2. Serum albumin of 3.0 g/dL or less, present on at least two evaluations at least 60 days apart; or
>3. Clinically documented tender abdominal mass palpable on physical examination with abdominal pain or cramping that is not completely controlled by prescribed narcotic medication, present on at least two evaluations at least 60 days apart; or
>4. Perineal disease with a draining abscess or fistula, with pain that is not completely controlled by prescribed narcotic medication, present on at least two evaluations at least 60 days apart; or
>5. Need for supplemental daily enteral nutrition via a gastrostomy or daily parenteral nutrition via a central venous catheter. (See 105.10 for children who have not attained age 3.)

20 C.F.R. § Pt. 404, Subpt. P, App. 1, Listing 105.06 ((emphasis added).

Here, the objective evidence in the medical record shows that R.B., then twelve years old,

9

was seen in the emergency room on March 17, 2010, complaining about pain after a bowel movement. (Tr. 382-384). Several days later, on March 22, 2010, he was seen by Dr. Monique Jones at the El Franco Lee Health Center, after he continued to have pain in the buttocks/anal area. Dr. Jones, upon examination, found a "2 x 2 cm firm indurated tender nodule inside inner right buttock," which she diagnosed as an early appearing abscess, for which she prescribed antibiotics and soaks. (Tr. 423-425). Three days later, on March 25, 2010, after R.B. continued to experience pain, Dr. Jones referred R.B. for further evaluation, including the possible incision and draining of the abscess. (Tr. 418-420). An "examination under anesthesia and drainage of complex perirectal abscess" was performed that same day, revealing a "very large 4 to 5-cm abscess that was [ ] intersphincteric on the left side and extended deep" with "clear pus draining from a fistulous tract." (Tr. 331-332). Following that surgical procedure, R.B. underwent an x-ray fluoroscope of his gastrointestinal tract and KUB, which revealed findings consistent with Crohn's disease. (Tr. 325-26).

    The vessel loop drain that had been placed during the March 25, 2010 surgery was removed on April 8, 2010, and R.B. reported that his perirectal pain had resolved. (TR. 322-325). In a follow-up visit to the gastrointestinal clinic at Texas Children's Hospital on April 13, 2010, Dr. Daniel H. Leung found that R.B. was doing well and his response to steroids and mesalamine had been good. (Tr. 381-321). He also believed that because R.B.'s Crohn's disease was "localized to his stomach and distal small bowel," that 6-MP (Mercaptopurine) might be a better medication for him than Pentasa. (Tr. 320).

    On April 23, 2010, R.B. underwent a second incision and drainage of the perirectal abscess, along with a fistulotomy and fistulectomy. (Tr. 315-316). The drain from that second procedure was

removed on April 29, 2010, and R.B. was started on 6-MP for his Crohn's disease. (Tr. 312-313). Two weeks later, on May 13, 2010, R.B.'s recurring abscess was evaluated, with R.B. reporting intermittent pain in his left buttock since the second incision and drainage surgery. (Tr. 308-310). As the abscess continued to drain, an additional incision and drainage procedure was recommended. (Tr. 310, 273-74, 503-506). That third incision and drainage procedure was done on May 26, 2010 (Tr. 281-306), and the drain was removed in an office procedure on June 17, 2010 (Tr. 335-336).

Following that procedure,. R.B. was seen by Dr. Leung on June 22, 2010. At that visit, R.B. denied "any tenderness, redness or fluctuance," he was noted to have gained three pounds, was "compliant with all his medications," and was "feeling well with excellent energy and appetite." (Tr. 333). In a follow-up office visit on September 17, 2010, Dr. Leung was "pleased" with R.B.'s progress and noted that he had been "symptom-free for the last three months." (Tr. 360-363). Dr. Leung also noted that "[h]is weight has been stable and he has no complaints of abdominal pain, fatigue, or diarrhea." (Tr. 362). He did have, upon examination, "some fluctuance of his perianal fistula," that was not determined to be "infected per se," but which necessitated a short course of antibiotics. (Tr. 362). Dr. Leung decreased R.B.'s dosage of 6-MP (from 75 mg to 50 mg), and encouraged R.B. to continue to take 2 nutritional supplements daily. (362-363). Follow-up lab reports in both September and November 2010, found R.B.'s 6-MP levels to be very low, necessitating Dr. Leung to increase R.B.'s 6-MP dosage on December 7, 2010, to 100 m.g. once a day. (Tr. 354-359). At a follow-up visit on December 21, 2010, Dr. Leung again expressed concern over R.B.'s low, subtherapeutic 6-MP levels. (Tr. 490-492).

On January 20, 2011, when he was next seen by Dr. Leung, R.B. reported that his energy and appetite were better, and he denied any abdominal pain, but still had some mucousy diarrhea. He

drank 2 cans of Boost per day and had gained another four pounds in the last month. As his 6-MP levels were still very low ("undetectable despite compliance"), Dr. Leung recommended a repeat EGD/colonoscopy. (Tr. 446-448). That EGD, done on February 23, 2011, revealed "gastritis in body, antrum. Significant duodenitis within the bulb. Colon reveals poor cecal landmarks, tremendous ileitis with edema, significant friability." Thereafter, Dr. Leung recommended that R.B. undergo Remicaid infusions in lieu of the 6-MP, which was not found to be present in therapeutic quantities in R.B.'s lab work. (Tr. 433-435).

On June 7, 2011, when he was next seen by Dr. Leung, R.B. had had two doses of Remicaid and was doing well. (Tr. 430-431). R.B. had gained 20 pounds since January and reported "that his energy and appetite [were] better. (Tr. 430). He denie[d] any abdominal pain, but some mucous with formed stools. No urgency, tenesmus, or purulence/bleeding from his skin tags. No hematochezia. He is eating large portions." (Tr. 430). Leung continued R.B. on the Remicaid infusions and noted that R.B.'s "perianal disease is the best I have seen it and he is growing well." (Tr. 431). By October 6, 2011, R.B. had had his fourth dose of Remicaid, and Dr. Leung found his energy and appetite to be "excellent." (552-554). By November 2011, Dr. Leung opined that R.B.'s Crohn's disease was in remission. (Tr. 544-546).

Based on the above recited objective medical evidence in the record, the ALJ's determination that R.B. did not meet Listing 105.06 is supported by substantial evidence. Part B of Listing 105.06 requires that a claimant have *two* of the listed five objective findings. Here, R.B. only met *part* of *one* of the objective findings – "perianal disease with a draining abscess or fistula . . . present on at least two evaluations at least 60 days apart." Listing 105.06, Part B(4). The objective medical evidence shows that R.B. did have a draining abscess from March 25, 2010, through his last surgical

procedure in late May, 2010, and some nominal, additional drainage into December 2010. But there is no objective medical evidence that R.B.'s perianal disease with draining abscess or fistula was associated with "pain that is not completely controlled by prescribed narcotic medication." In fact, other than during the initial abscess diagnosis and during and after the first incision and drainage in late March 2010, R.B generally denied being in any pain, and was only prescribed narcotic pain medication for a short period of time. As for any of the other four objective findings required for part B of Listing 105.06, R.B. admittedly did not meet any of them. Substantial evidence therefore supports the ALJ's determination that R.B. did not meet Listing 105.06.

Relatedly, there is substantial evidence in the record to support the ALJ's determination that R.B.'s Crohn's disease did not *medically equal* Listing 105.06. Medical equivalence can be found in three ways:

> (1)(i)  If you have an impairment that is described in the Listing of Impairments in appendix 1 of subpart P of part 404 of this chapter, but –
>
>> (A) You do not exhibit one or more of the findings specified in the particular listing, or
>> (B) You exhibit all of the findings, but one or more of the findings is not as severe as specified in the particular listing,
>
> (ii) We will find that your impairment is medically equivalent to that listing if you have other findings related to your impairment that are at least of equal medical significance to the required criteria.
>
> (2) If you have an impairment(s) that is not described in the Listing of Impairments in appendix 1 of subpart P of part 404 of this chapter, we will compare your findings with those for closely analogous listed impairments. If the findings related to your impairment(s) are at least of equal medical significance to those of a listed impairment, we will find that your impairment(s) is medically equivalent to the analogous listing.
>
> (3) If you have a combination of impairments, no one of which meets a listing described in the Listing of Impairments in appendix 1 of subpart P of part 404 of this

chapter (see § 416.925(c)(3)), we will compare your findings with those for closely analogous listed impairments. If the findings related to your impairments are at least of equal medical significance to those of a listed impairment, we will find that your combination of impairments is medically equivalent to that listing.

20 C.F.R. § 416.926 (Medical equivalence for adults and children).

Turner argues in this appeal that when R.B.'s impairments that meet subsection 4 of part B of Listing 105.06 are considered along with his anemia and required nutritional supplementation, both of which are supported by the record but do not meet the severity requirements of subsections 1 and 5 of Part B of Listing 105.06, R.B.'s Crohn's disease could and should be considered to *medically* equal Listing 105.06 within the meaning of 20 C.F.R. § 416.926(b)(1). This argument ignores the fact that *none* of R.B.'s symptoms or the objective findings met the severity requirements of subsection of Part B of Listing 105.06, that R.B. rarely complained of pain, responded well to treatment, particularly Remicade, and that R.B.'s Crohn's disease was considered by Dr. Leung to be in remission. This is not a case where R.B.'s condition was so close to that required to meet Part B of Listing 105.06. Nor is it a case in which R.B.'s Crohn's disease could not be effectively controlled with medication. Instead, this is a case in which R.B.'s Crohn's disease was timely and effectively treated, and within a few short months his appetite and energy were good, he had gained weight, and his symptoms were intermittent. The ALJ's medical equivalence determination is therefore supported by substantial evidence.

As for the ALJ's functional equivalency determination, the objective medical evidence, the expert opinion evidence, and the evidence of R.B.'s subjective complaints all support the ALJ's determination that R.B. only has limitations in the domains of caring for yourself and health and physical well-being, and those limitations are "less than marked." A limitation is "marked" if it

"interferes seriously with [the claimant's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2). A "marked" limitation is one "that is 'more than moderate,' but 'less than extreme'". *Id.* In the domain of health and physical well-being, a limitation is to be considered "marked" if:

> you are frequently ill because of your impairment(s) or have frequent exacerbations of your impairment(s) that result in significant, documented symptoms or signs. For purposes of this domain, "frequent" means that you have episodes of illness or exacerbations that occur on an average of three times a year, or once every 4 months, each lasting 2 weeks or more. We may also find that you have a "marked" limitation if you have episodes that occur more often than 3 times in a year or once every 4 months but do not last for 2 weeks, or occur less often than an average of 3 times a year or once every 4 months but last longer than 2 weeks, if the overall effect (based on the length of the episode(s) or its frequency) is equivalent in severity.

20 C.F.R. § 416.926a(e)(2)(iv).

Here, Turner testified at administrative hearing that R.B. was diagnosed with Crohn's disease in late March 2010, in connection with the treatment and surgical drainage of a perianal abscess. From late March to early June, 2010, R.B. had three surgeries to incise and drain the abscess, following which Turner would soak R.B's "bottom" from two to five times a day to allow the abscess to further drain. Turner also testified that the 6-MP medication R.B. was taking up to March 2011 was not very effective and left him both fatigued and with diarrhea.

Turner's testimony does not support her arguments that R.B. had a "marked" limitation in the domains of taking care of himself or health and physical well-being. That is particularly true given that R.B.'s abscess was treated over a period of three months, and that R.B., despite not responding particularly well to 6-MP, did respond well to the Remicade infusion therapy, which was started in March-April 2011.

As for the two teacher questionnaires in the record, the ALJ gave no weight to the un-dated,

15

unsigned questionnaire from an unknown and unidentified 7th grade literature teacher, who stated that R.B. has obvious to serious problems acquiring and using information, but no problems in any other domain. (Tr.19) ("While his teacher purportedly stated that he has obvious to serious problems in this area due to fatigue, no weight is given to this statement because the teacher is not identified and it is not signed."). As for the questionnaire completed by Aaron Frieby on July 1, 2011, following R.B.'s sixth grade year, he only stated that R.B. had a slight to obvious problem in various aspects of caring for himself (Tr. 165-174) – not a response that could not be said to equate to a marked limitation in the domain of caring for yourself. Finally, the medical expert, Dr. Janese, who testified at the administrative hearing, concluded, from his review of R.B.'s medical records, that R.B. had a less than marked limitation in the domains of caring for self and health and physical well-being. (Tr. 51-52).

In all, the objective medical evidence supports the ALJ's determination that R.B.'s Crohn's disease did not meet or medically equal a listing. In addition, the objective medical evidence, the subjective evidence, and the expert medical opinion evidence supports the ALJ's functional equivalence determination that R.B. has only less than marked limitations in the domains of caring for himself and physical health and well-being, limitations that are insufficient to establish functional equivalence. *See* 20 C.F.R. § 416.926a(b) (functional equivalence requires a finding of marked limitations in two domains or an extreme limitation in one domain). As such, the ALJ's decision that R.B. was not disabled is supported by substantial evidence.

**VI.     Conclusion and Order**

Based on the foregoing, and the conclusion that the ALJ's determination at step three is supported by substantial evidence, it is

ORDERED that Defendant's Motion for Summary Judgment (Document No. 19) is GRANTED, Plaintiff's Motion for Summary Judgment (Document No. 22) is DENIED, and the decision of the Commissioner denying Turner's May 2010 application for supplemental security income benefits is AFFIRMED.

Signed at Houston, Texas, this 16th day of August, 2016.

Frances H. Stacy
United States Magistrate Judge